JOHN KURRE, RESPONDENT, v. AMERICAN INDEMNITY COMPANY, GALVESTON, TEXAS, GARNISHEE OF LIBERTY BOTTLING COMPANY, A CORPORATION, APPELLANT.*—17 S. W. (2d) 685.

St. Louis Court of Appeals. Opinion filed June 4, 1929.

408

*Corpus Juris-Cyc References: Garnishment, 28CJ, section 241, p. 194, n. 60; section 252, p. 202, n. 44; section 309, p. 227, n. 14; section 318, p. 233, n. 83; section 321, p. 234, n. 16; section 322, p. 234, n. 23; section 325, p. 236, n. 44, 45, 47; section 469, p. 312, n. 65; Liability Insurance, 36CJ, section 4, p. 1058, n. 45; section 130, p. 1130, n. 97.

*Wilbur C. Schwartz* and *Charles E. Morrow* for American Indemnity Company, Garnishee, appellant.

410

*Alphonse E. Ganahl* and *James J. O'Donohoe* for respondent.

BENNICK, C.—This is a garnishment proceeding in aid of an execution issued by the clerk of the circuit court of the city of St. Louis, pursuant to a judgment theretofore rendered in said court for the sum of $10,000, with costs amounting to $69.20, in favor of John Kurre, the plaintiff, and against Liberty Bottling Company, a corporation, the defendant, in an action for damages for personal injuries sustained by plaintiff when struck by an automobile truck owned and operated by the defendant. The execution was delivered to the sheriff of Cole county, who executed the same, so far as was recited in his original return, by delivering a true copy of the summons to garnishee (alleged to have been attached thereto, although the abstract of the record does not so show), to J. A. Rathbun, Deputy Superintendent of the Insurance Department of the State of Missouri, as the person authorized by law to accept service for and in behalf of American Indemnity Company of Galveston, Texas, garnishee, and by declaring to him that he seized and attached in his hands all moneys, debt, and evidence of debts, due from said insurance company to the Liberty Bottling Company.

The usual interrogatories were filed and answered, and the issues subsequently made by the pleadings, presenting the sole question of whether the garnishee was indebted to the defendant, the judgment debtor of plaintiff, under and by virtue of its policy of insurance, indemnifying the defendant, in a sum limited to $5000, against loss by reason of the liability imposed by law upon it for damages for bodily injuries or death resulting from the operation of the truck in question, and further providing that no action should lie against

it to recover for any loss, damage, or expense, under the policy, unless such action was brought by the assured itself for loss, damage, or expense, actually sustained and paid by the assured, in satisfaction of a judgment after a trial of the issues.

A jury was waived, and the cause tried before the court alone, resulting in the entry of a final judgment in favor of plaintiff, and against the garnishee, in the total sum of $6803.08 and costs, from which the latter has duly appealed to this court.

On the very threshold of the case, we are faced with the insistence of learned counsel for the garnishee that the return of the sheriff of Cole county was, and is insufficient to give us jurisdiction, because it discloses that the summons and declaration to garnishee were served upon the deputy superintendent of insurance, and fails to state that the superintendent was absent, or that any other statutory requirement existed so as to make service upon the deputy valid. While not conceding the force of such suggestion, counsel for plaintiff have nevertheless deemed it the better part of discretion to ask leave, on behalf of the sheriff, to file the summons to garnishee in this court, inasmuch as he inadvertently failed to attach the same to, or file it with, his return, and to amend the return itself, for the purpose of making it state the facts, so as to read as follows:

"Executed this writ in the county of Cole, and State aforesaid, on the 15th day of September, 1925, by delivering a true copy of the summons to J. A. Rathbun, Deputy Superintendent of the Insurance Department of the State of Missouri, the Superintendent of Insurance being absent he being the person authorized by law to accept service for and in behalf of the American Indemnity Company of Galveston, Texas, garnishee, in the absence of the Superintendent of Insurance, and by declaring to him, the said Deputy Superintendent of Insurance that I seized and attached in the hands of said Insurance Company all moneys, debt and evidence of debts due from said Insurance Company to the within named defendant, Liberty Bottling Company, a corporation, or so much thereof as shall be sufficient to satisfy the sum of ten thousand dollars and — cents, with interest and cost of suit; and by further declaring to him, the said Deputy Superintendent of Insurance, in writing, that I summoned the American Indemnity Company of Galveston, Texas, as garnishee, to appear before the Circuit Court of the City of St. Louis, Missouri, at the return term of this Writ, said term commencing on the 1st Monday of October, 1925, to answer such interrogatories as may be then and there propounded by John Kurre, the Plaintiff."

So far as concerns the filing in this court at this time of the summons to garnishee, and the return thereof, we think it is clear, and counsel do not seriously argue otherwise, that the garnishee's rights will not be materially affected thereby. The only purpose the sum-

mons was ever designed to serve was to bring the garnishee personally into court (Fletcher v. Wear, 81 Mo. 524; Connor v. Pope, 18 Mo. App. 86; Swallow v. Duncan & Gregory, 18 Mo. App. 622; Potter v. Whitten, 161 Mo. App. 118, 142 S. W. 453), and, since the garnishee filed answers to the interrogatories propounded by plaintiff, and appeared generally to the proceeding below, it thereby waived any defect in the service of the summons as to it personally. [Fletcher v. Wear, supra; Connor v. Pope, supra; Epstein v. Salorgne, 6 Mo. App. 352; Potter v. Whitten, supra; Federal Truck Co. v. Mayer, 216 Mo. App. 443, 270 S. W. 407; State ex rel. v. Pfeffle, 220 Mo. App. 676. 293 S. W. 512.]

The serious point with which we are confronted has to do with the allowance of the amendment to the return of the sheriff on the execution, which constitutes the writ or process of the court, since the jurisdiction of the court is established over the property or debt garnished only when such return shows that the proper declaration to the garnishee was made. [Gates v. Trusten, 89 Mo. 13, 14 S. W. 827; Commercial Real Estate & Brokerage Co. v. Riemann, 116 Mo. App. 649, 93 S. W. 305; Todd v. Mo. Pac. R. Co., 33 Mo. App. 110; Gregor Grocer Co. v. Carlson, 67 Mo. App. 179; State ex rel. v. Pfeffle, supra.] It is well agreed, and the authorities heretofore cited so hold, that the declaration or notice of seizure is the means by which the *res* is brought into court, and is an indispensable prerequisite to jurisdiction over the same; that jurisdiction over the *res*, which may, or may not, be the property of, or due and owing to, the defendant, can neither be waived nor conferred by consent; and that even though the garnishee by appearing cannot complain of the judgment in so far as it may affect him personally, nevertheless, the pertinent statutes must be strictly complied with in order to give the court jurisdiction to proceed, since mere jurisdiction over the person will not carry with it jurisdiction over the *res*.

Thus we have a two-fold matter for decision: First, whether the amendment of the return should be allowed in this court at this time; and, second, whether the return as amended (assuming that the same should be allowed), is sufficient to confer jurisdiction upon the court over the debt alleged to be due from the garnishee to plaintiff's judgment debtor.

As to the first of such questions, the rule, generally speaking, even in the case of actions as technical as proceedings in garnishment, is that the return may be amended so as to make it conform to the facts; and that the garnishee will not be heard to object, either that the amendment is permitted during the trial of the case, or, where jurisdiction of the court in fact exists, that jurisdiction would not appear except by the amendment. [Cassidy Bros. Commission Co. v. Estep, 63 Mo. App. 540; Todd v. Mo. Pac. R. Co., supra; Brecht v. Corby, 7 Mo. App. 300; 28 C. J. 236.]

Furthermore, and applying the rule more closely to the particular facts of the case at bar, it is held that where the amendment of the return would show that the officer actually took the proper steps to confer jurisdiction upon the court before the judgment was rendered, the amendment may be allowed in the discretion of the court, even though not sought until after the case is removed to a court of appellate jurisdiction. [Gregor Grocer Co. v. Carlson, supra; Godman v. Gordon, 61 Mo. App. 685; Cassidy Bros. Commission Co. v. Estep, supra; Fee v. Kansas City, F. S. & M. R. Co., 58 Mo. App. 90.] Such holding states no new doctrine, because the practice has been consistently approved by the appellate courts of this State in actions of every character, provided, of course, that the rights of third parties have not meanwhile intervened. In this connection, see: Muldrow v. Bates, 5 Mo. 214; Transier v. St. Louis, K. C. & N. Ry. Co., 54 Mo. 189; Turner v. Kansas City St. J. & C. B. R. Co., 78 Mo. 578; Boulware v. Chicago & A. R. Co., 79 Mo. 494; Martin v. Castle, 182 Mo. 216, 81 S. W. 426; Bunton v. Adams, 65 Mo. App. 6; Holtschneider v. Chicago, R. I. & P. Ry. Co., 107 Mo. App. 381, 81 S. W. 489.

Our ruling upon the point is, therefore, that the amendment of the return, in the terms requested, should be allowed. Thus the return, as we shall hereafter consider it, discloses that the declaration of seizure was made to the deputy superintendent of insurance, the superintendent himself being absent, he (the deputy) being the person authorized by law to accept service for and in behalf of the garnishee in the absence of the superintendent.

Counsel for the garnishee argue, however, that even the amended return is insufficient to confer jurisdiction upon us, their precise contention being that the return, to have been valid, should have shown that the superintendent of insurance was absent from the State at the time service was had. They insist that the office of the superintendent is of state-wide jurisdiction; that the duties of the office do not devolve upon the deputy, so long as the superintendent himself is within the State; and that, sequentially, the deputy was unauthorized by law to accept service, and service upon him was of no avail, unless such a statutory requirement actually existed as to make him in effect the head of the department.

In support of their position, counsel call our attention to section 1192, Revised Statutes 1919, providing for the service of summons upon a corporation, and particularly to the case of Hoen v. The Atlantic & Pacific R. Co., 64 Mo. 561, construing such section, and holding that the return of the sheriff to a summons, in order to be valid, should recite that the chief officer of the corporation was absent from, or could not be found in, the county, and not merely and generally that he was absent. In our view of the case, however, the two situations are not analogous, and we do not regard the decision

relied upon as here controlling, since section 1192, in the concluding portion thereof, specifically designates how service of summons may be had in the event that the president or chief officer of the corporation cannot be found in the county, thus conclusively indicating that the Legislature, in enacting such statute, had in mind the very construction which the court in the case cited subsequently put upon it.

The statutes applicable to the point for decision are section 6085, Revised Statutes 1919, and section 6310a, as enacted Laws 1925, p. 278, the former providing that the deputy superintendent of insurance shall possess all the powers, and perform all the duties, attached by law to the office of the superintendent, during a vacancy in such office, and during the absence, inability, or suspension of the principal; and the latter, that in case of a vacancy in the office of superintendent, or in case of his absence, inability, or suspension, service upon the deputy shall be valid and sufficient.

It will be observed that in neither of these sections did the Legislature in anywise attempt to qualify the meaning of the term ''absence,'' so as to indicate that it was either absence from the State, or absence from the county, that was meant. To the contrary, the purpose of both enactments undoubtedly was to insure generally that in matters requiring immediate attention there would at all times be a qualified party in charge of the office to transact the business at hand; to make service easy, rather than difficult; and to provide a means whereby the sheriff might go to the office of the insurance department with the process intrusted to him, and find some one in charge thereof empowered to accept service. In fact, in the passage of section 6310a, the Legislature even went so far as to provide that in the absence or inability of both the superintendent and his deputy, service might be had upon the chief clerk, thus disclosing clearly to our minds that the intent back of the legislation was precisely as we have here construed it.

So far as we are advised, the matter now under consideration is one of first impression in this State; but we find that eminent courts of other jurisdictions, when faced with the interpretation of much the same language in acts of similar purport, have held the word ''absence,'' as used in this connection, to be synonymous with ''nonpresence.'' [Commonwealth v. Ginn & Co., 120 Ky. 83, 89, 85 S. W. 688; Engeman v. State, 54 N. J. L. 247, 251, 23 Atl. 676; Manners v. Ribsam (N. J.), 41 Atl. 676; State v. Smith, 107, La. 129, 31 So. 693.] Believing that the reasoning of such cases is sound, that they represent the legislative intent, and that they are peculiarly applicable to the situation at hand, we regard them as persuasive, and consequently rule that the return as amended, reciting service upon the deputy in the absence of his principal, is sufficient to show jurisdiction in the court over the subject-matter of the action, so as to permit us to pass upon the merits of the case proper.

The garnishee's other assignments of error, twelve in number, all go to the propriety of the giving and refusal of declarations of law peremptory or otherwise, and in one way or another question the finding and judgment of the court that the garnishee was indebted to the defendant under its policy, which, as counsel for the garnishee would have us construe it, was one of reimbursement, and designed to indemnify the assured merely against loss sustained by it by the actual payment in money of a claim or judgment against it, and not one to insure against liability alone. Since the defendant had concededly not satisfied the judgment theretofore rendered against it in the action for damages for personal injuries, they argue that the garnishee owed the defendant nothing under its policy, and was, therefore, not subject to garnishment at the hands of plaintiff in his capacity of judgment creditor.

The pertinent provisions of the insuring and no-action clauses of the policy here in question are as follows:

"To indemnify the assured . . . against loss by reason of the liability imposed by law upon the assured for damages on account of bodily injuries, including death at any time resulting therefrom, accidentally suffered or alleged to have been suffered while this policy is in force by any person or persons, . . ."

"No action shall lie against the company to recover for any loss, damage and/or expense, under this policy, unless it shall be brought by the assured for loss, damage and/or expense actually sustained and paid by him in money in satisfaction of a judgment after trial of the issue, . . ."

In the carefully considered case of Goerss v. Indemnity Company of America (Mo. App.), 3 S. W. (2d) 272, this court recently had occasion to construe a policy containing insuring and no-action clauses worded in almost identically the same language, and certainly of the same import, as the corresponding clauses in the policy now under review, as reference to the opinion in the former case will show. In answer to the same suggestions as are now advanced by the garnishee herein, we there held, in substance, that such a policy was properly one of insurance against liability, and not a mere reimbursement contract; that the insurer's promise in the insuring clause could not be defeated by denying to the insured in the no-action clause, under the guise of a limitation, the right to maintain an action for the enforcement of the insurer's promise; and that, in so far as the no-action clause undertook and purported to limit the insurer's liability merely to an obligation to reimburse the insured for money paid by him in discharging his liability, it was out of harmony with the insuring clause, and should yield to it.

The Goerss case went to the Supreme Court on *certiorari,* wherein it was found to be in no conflict with the controlling decisions of that court; and, in an opinion filed, State ex rel. Indemnity Co. of America

v. Daues (Mo. Sup.), 13 S. W. (2d) 1059, the writ of *certiorari* was held to have been improvidently granted, and was ordered, quashed. Under these circumstances, the Goerss case is controlling upon the case at bar; and upon its authority we rule that the judgment of the lower court, holding that the garnishee was indebted to the defendant, and subject to garnishment at the instance of plaintiff, was proper, and that no claim of error may be predicated upon the court's action with reference to the giving or refusing of declarations of law, upon any theory adverse to the conclusions expressed in that opinion. [See, also: Jedlicka v. Missouri Mut. Casualty Co. (Mo. App.), 14 S. W. (2d) 535.]

In support of its point with reference to the alleged propriety of its requested, but refused, peremptory declaration of law, the garnishee argues that the evidence did not establish that the automobile truck which injured plaintiff was covered by the policy, or that it was being operated at the time by the defendant. The last suggestion has its basis in certain evidence tending to show that the corporate existence of the defendant was dissolved prior to the date on which plaintiff's injury was received.

As to the first proposition, we think there was substantial evidence adduced showing that the truck by which plaintiff was injured was covered by the policy in question. We say this for the reason that there was positive testimony that the license number of the particular truck was the license number of the truck mentioned in the policy; that such truck was the only one used by the defendant on the day of the accident; and that, following the accident, the truck was examined, and found to have been damaged in the collision with the car in which plaintiff was riding.

The point in regard to whether the defendant was operating the truck at the time of the accident presents a somewhat more complicated question, but we are nevertheless of the opinion that the insistence of the garnishee is again equally unavailing. The controversy arises from the fact that plaintiff's witness, Horwitz, the president of the Liberty Bottling Company, admitted on the stand that the corporate existence of his company had been dissolved; and that, as a part of the cross-examination of the witness, counsel for the garnishee, over the objection of plaintiff, offered in evidence a certificate of the Secretary of State, showing the filing in his office of an affidavit of dissolution upon a unanimous vote of the shareholders as of June 29, 1920, which was more than one month prior to the day on which plaintiff's injury was sustained.

The error in the position taken by the garnishee lies in the fact that even though the certificate of the Secretary of State does not show the date on which the affidavit of dissolution was filed in his office, it does affirmatively disclose that the affidavit itself was not made until October 8, 1920, more than two months after the accident;

and, in the very nature of things, it could not have been filed until after it was made.

The statute in force at the time of the purported dissolution was section 9756, Revised Statutes 1919, which provided, and as subsequently repealed and reenacted still provides, that whenever, by unanimous vote of all the shareholders, a resolution is adopted favoring the dissolution of the corporation, after the payment of all debts, claims, or bills, then the corporation may be dissolved by filing an affidavit•of dissolution with the Secretary of State, setting forth the above facts, and that, when such affidavit has been filed, it shall be taken as prima-facie evidence of such voluntary dissolution.

It is clear to our minds that the statute is susceptible of no interpretation other than that the dissolution is presumptively effected by the filing of the required affidavit with the Secretary of State, and not by the unanimous vote of the shareholders, which only serves the purpose of favoring the dissolution. Consequently, from the very evidence now relied upon by the garnishee, it conclusively appears that the corporate existence of the defendant had not been extinguished at the time of the accident, in view of which the contention that there was no showing that the truck was being operated at the time by the defendant must be disallowed.

The last point for attention is the insistence of counsel for the garnishee that the court was in error, at the close of the case, and after their own requested peremptory declaration of law had been refused, in giving the following declaration of law at the request of plaintiff:

"The court is of the opinion and declares the law to be that under the law, the pleadings and the evidence, American Indemnity Company, Galveston, Texas, garnishee herein, of Liberty Bottling Company, defendant, is indebted to said Liberty Bottling Company, defendant, in the sum of five thousand dollars, with interest thereon, at the rate of six per cent. per annum from the 24th day of May, 1921, together with the sum of sixty-nine dollars and twenty cents, being the court costs in the damage suit."

Counsel argue at great length that the above declaration of law was mandatory and peremptory as to the ultimate facts to be found upon the issue of the garnishee's liability; and that it was erroneous, since it precluded the court, as the trier of the facts, from a consideration of the evidence, and the weight to be accorded to the same, and particularly to the parol evidence adduced by plaintiff in proof of the fact that.the automobile of defendant which struck and injured him was the one covered by the policy in question.

While we are not unmindful of the views expressed in the authorities relied upon by counsel for garnishee in support of their point, we are nevertheless convinced that the last controlling cases, and the ones which to our minds seem to have been more soundly

reasoned, announce the doctrine that the giving of a declaration of law in such form and under kindred circumstances is not error.

These cases hold that even though a peremptory instruction of this character would be erroneous in a jury trial as taking the case away from the jury, yet where the issues of fact are submitted to the court, the peremptory declaration of law amounts to no more than the verdict found; that it cannot be said either to mislead the court or to withdraw from its consideration the testimony adduced at the trial; that if the law and the evidence warrant the finding made, then the peremptory declaration simply declares that the court intends to do what it ought to have done without any such declaration of its duty; and that this is particularly true where the action of the court in connection with the giving and refusal of other requested declarations of law discloses that it applied no erroneous principle of law to the case. [Heynbrock v. Hormann, 256 Mo. 21, 164 S. W. 547; Stone v. Spencer, 77 Mo. 356; A. Jaicks Co. v. Schoellkopf (Mo. Sup.), 220 S. W. 486; Kansas City ex rel. v. Askew, 105 Mo. App. 84, 79 S. W. 483; Chaonia State Bank v. Sollars, 190 Mo. App. 284, 176 S. W. 263.] In fact there is authority that even in a case where the defendant has offered testimony, a peremptory declaration of law to find for plaintiff is not erroneous, provided there was no substantial evidence adduced to show a defense. [A. Jaicks Co. v. Schoellkopf, supra; Saucier v. Kremer, 297 Mo. 461, 249 S. W. 640.]

In this instance it is true that the garnishee, under its general denial, raised an issue as to every element of plaintiff's case, yet its principal and only affirmative defense was based directly upon the legal effect to be ascribed to the no-action clause in its policy. Through the giving and refusal of declarations of law requested by the garnishee, the court indicated, not only what its theory of the law was, but also that it was governed by the proper theory, as we have heretofore held. Plaintiff clearly made out a prima-facie case as to every essential element which he was required to prove; the garnishee offered no evidence whatsoever; and the only affirmative defense set up by the garnishee was an invalid one. Consequently, the peremptory declaration of law for plaintiff was not improper under the circumstances of the case; and upon the authority of the cases we have cited, the objection urged by counsel must be disapproved.

In consequence of the views herein expressed, it follows that the sheriff's petitions for leave to file summons, and to amend his return should be allowed; and that the judgment of the circuit court should be affirmed. The commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The sheriff's petitions for leave to file summons, and to amend his return are allowed; and the judgment of the circuit court is affirmed. *Haid, P. J.,* and *Becker* and *Nipper, JJ.,* concur.